**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

WADE M.[1],                                      Case No. 3:25-cv-188
      Plaintiff,                               Rice, J.
                                                 Litkovitz, MJ.

      vs.

COMMISSIONER OF                                  **REPORT AND**
SOCIAL SECURITY,                                 **RECOMMENDATION**
      Defendant.

Plaintiff Wade M. brings this action under 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's

application for disability insurance benefits (DIB).  This matter is before the Court on plaintiff's

Statement of Errors (Doc. 6), the Commissioner's opposition (Doc. 8), and plaintiff's reply (Doc.

9).

## I.  Procedural Background

Plaintiff protectively filed an application for DIB in September 2022, alleging disability as

of July 18, 2022, due to a back injury/spondylosis, mental issues, sleep apnea, sciatica, femoral

nerve issues, and hyperthyroidism.  (Tr. 179-80, *see also* Tr. 207).  The application was denied

initially and on reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo*

hearing before administrative law judge (ALJ) Heidi Southern.  Plaintiff and a vocational expert

(VE) appeared telephonically and testified at the ALJ hearing on February 20, 2024.  (Tr. 38-60).

On April 17, 2024, the ALJ issued a decision denying plaintiff's application.  (Tr. 12-32).  On

April 9, 2025, the Appeals Council denied plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner.  (Tr. 1-6).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render a claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

2

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B.  The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2026.

2. [Plaintiff] has not engaged in substantial gainful activity since July 18, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: degenerative disc disease (DDD) of the lumbar spine; obstructive sleep apnea (OSA); central sleep apnea (CSA); headaches; obesity (at times); depressive disorder; anxiety disorder; and neurocognitive disorder (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift/carry ten pounds frequently and twenty pounds occasionally; sit six hours in an eight-hour workday; stand/walk six hours in an eight hour workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; no exposure to hazards such as unprotected heights or moving mechanical parts; unskilled simple, routine[,] repetitive[ ] tasks of no more than one to two steps; unable to perform at a production-rate pace (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner); occasional superficial contact with coworkers and supervisors but no teamwork, tandem tasks, conflict resolution, persuasion of others or over-the-shoulder supervision; "superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; no contact with the general public as part of job duties; and occasional changes in an otherwise static work environment explained in advance to allow time for adjustment to new expectations.

3

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born [in] . . . 1979, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 18, 2022, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-31 (citations to the record omitted)).

**C.  Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

---

[2] Plaintiff's past relevant work was as a fast-food cook, a medium, skilled job; and a light truck driver, a medium, semi-skilled job.  (Tr. 30, 56).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as marker (90,000 jobs nationally), warehouse checker (100,000 jobs nationally), and office mail clerk (100,000 jobs nationally).  (Tr. 31, 58).

4

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors[4]

On appeal, plaintiff raises a single assignment of error: the ALJ erred by acknowledging that plaintiff is markedly limited in understanding, applying, and remembering information yet concluding in the residual functional capacity (RFC) determination that plaintiff can perform goal-oriented, full-time, competitive work. Plaintiff argues that the state agency consultants' opinions, the consultative examiner's opinion, and other evidence is consistent with a marked limitation in this mental functioning area. Plaintiff argues that a person with this type of limitation "[s]urely . . . would be off-task at work at least 10 percent of the time" (Doc. 6 at PAGEID 914); and because this was not incorporated into the VE hypothetical, the Commissioner did not carry his burden at step 5 of the sequential evaluation process.

The Commissioner argues in response that the presence of a marked mental limitation is not dispositive of disability, and the authorities plaintiff cites to support his conclusion otherwise

---

[4] Plaintiff does not raise arguments related to his physical impairments. Any such arguments are therefore deemed waived. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it either legally or factually in the Statement of Errors") (report and recommendation), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

are not persuasive.  The Commissioner notes that other details in the state agency consultants' and the consultative examiner's opinions regarding plaintiff's mental impairments were consistent with the ALJ's RFC decision.  The Commissioner concludes that the ALJ was required only to craft an RFC that she found supported by the evidence, and the Court here may not reweigh the evidence.

In reply, plaintiff reiterates his opening positions and adds his anecdotal experience— noting that he "has handled thousands of Social Security Disability cases" and "cannot recall a case where an ALJ found that an individual with marked limitations in understanding, remembering, or applying information can sustain full-time competitive goal-oriented work. . . ." (Doc. 9 at PAGEID 932).

### 1.   Relevant medical opinions and the ALJ's decision

At the initial level, in the psychiatric review technique (PRT) portion of the assessment, state agency consultant Ermias Seleshi, M.D., opined that plaintiff had a marked limitation in his ability to understand, remember, or apply information.  (Tr. 66).  In the RFC portion of his assessment, Dr. Seleshi broke down plaintiff's understanding and memory limitation into three abilities: remembering locations and work-like procedures, understanding and remembering very short and simple instructions, and understanding and remembering detailed instructions.  (Tr. 67). Dr. Seleshi found moderate limitation in the former two abilities and marked limitation only in the ability to understand and remember detailed instructions.[5]  (*Id.*).  Narratively, Dr. Seleshi opined that plaintiff was capable of understanding, remembering, and following simple instructions for familiar, routine, well-learned, and repetitive 1 to 2-step tasks.  (Tr. 67-68).  On

---

[5] Similarly, in the breakdown of plaintiff's sustained concentration and persistence limitation, Dr. Seleshi found no more than moderate limitation in every ability except the ability to carry out detailed instructions, which he found markedly limited.  (Tr. 68).

reconsideration, state agency consultant Gale Sargeant, Ph.D., shared these opinions. (Tr. 75, 78). The ALJ found these opinions "mostly persuasive" and agreed, in particular, with their assessment of marked limitation in understanding, remembering, and applying information. (Tr. 28; *see also* Tr. 20).

Consultative examiner Brian Griffiths, Psy.D., examined plaintiff and administered several psychometric tests. (Tr. 426-34). On the Wechsler Adult Intelligence Scale (4th ed.), plaintiff tested in the borderline range of intelligence (fifth percentile). (Tr. 430). On the Wechsler Memory Scale (4th ed.), plaintiff tested in the deficient range (less than first percentile) for most categories (the auditory, visual, immediate, and delayed memory indices) and in the borderline range for working memory index. (Tr. 431). Narratively, Dr. Griffiths described plaintiff's abilities and limitations in the area of understanding, remembering, and applying information as follows:

> [Plaintiff] reported that he quit school in the tenth grade. He stated that he was identified as a special education student. He reported that he eventually obtained his GED. [Plaintiff] impressed the examiner as a person whose premorbid level of intellectual functioning fell in the average to low-average range of intelligence. He understood and followed simple instructions during the evaluation. He performed within normal limits on Digit Span, a simple structured task designed to assess his short-term memory skills. However, he obtained WMS-IV [immediate memory index] and [delayed memory index] scores falling at less than the 1st percentile for his age group.

(Tr. 433). In the area of sustaining concentration and persisting in work-related activity at a reasonable pace, Dr. Griffiths opined:

> [Plaintiff] was able to follow the conversation during the interview. He did not ask the examiner to repeat and/or clarify questions. However, he was unable to perform serial sevens, a simple structured task designed to assess his attention and concentration skills. He obtained a WAIS-IV WMI score falling at about the 13th percentile for his age group.
>
> As far as his pace, [plaintiff] displayed good task perseverance during the evaluation. However, he obtained a WAIS-IV PSI score falling at the 8th percentile for his age

7

group.  [Plaintiff] reported that his energy level is low.  He stated that he gets easily fatigued.  [Plaintiff] alluded to a low mood.  He reported that he sometimes gets panic attacks.  He described and displayed signs of neuropsychological impairment.  Cognitive dysfunction and/or anxiety and/or depression may interfere with [plaintiff]'s ability to keep up with others.

(*Id.*).

The ALJ found Dr. Griffiths' opinions "mostly persuasive. . . ."  (Tr. 29).  The ALJ explained that consistent with psychometric test results and "in consideration of [plaintiff]'s reported educational history, . . . [plaintiff] has a marked limitation in understanding, remembering, or applying information.  This limitation has been translated into a vocational ability to perform unskilled simple, routine, repetitive tasks of no more than one to two steps."  (*Id.*).  The ALJ translated Dr. Griffiths' opined concentration, persistence, and pace limitations into "unskilled simple, routine, repetitive tasks of no more than one to two steps in a work environment with goal-oriented work but [without] production rate pace requirements."  (*Id.  See also* Tr. 22 ("After careful consideration of the entire record, the undersigned finds that [plaintiff] has the residual functional capacity [for] . . . unskilled simple, routine[,] repetitive[ ] tasks of no more than one to two steps; [and is] unable to perform at a production-rate pace (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner). . . .")).

2.  Analysis

Plaintiff essentially presumes that a marked limitation in understanding, remembering, or applying information categorically precludes an individual from engaging in goal-directed, full-time, competitive employment.  The Court finds no authority for that conclusion and determines the ALJ's RFC determination is supported by substantial evidence.

Plaintiff cites *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991), which quotes a prior version of the Listings' definition of "marked" but does not otherwise offer analysis relevant to

the issue at bar.  *Id.* at 307 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C) (defining marked as "more than moderate, but less that extreme.  A marked limitation may arise when several activities or functions are impaired or even when one is impaired, so long as the degree of limitations is such as to seriously interfere with the ability to function independently, appropriately and effectively")).  Plaintiff then cites *Holland v. Comm'r of Soc. Sec.*, No. 3:14-cv-246, 2015 WL 6891032 (S.D. Ohio July 6, 2015), for its statement—in a footnote and without relevant analysis—that "'marked' and 'extreme' limitations are suggestive of disability."  *Id.* at *4 n.4.  These generalizations do not compel the conclusion that the ALJ's RFC determination here is not based on substantial evidence.

Plaintiff further argues that Social Security's own policies state that a marked limitation—which the ALJ found in understanding, remembering, and applying information—means a claimant "cannot usefully perform or sustain the activity" in question.  (Doc. 6 at PAGEID 912, citing Tr. 20).  In support, plaintiff cites the Program Operations Manual System (POMS),[6] which defines "markedly limited" as the inability to usefully perform or sustain an activity, and contends that this definition forecloses any finding of competitive work capacity.  (*Id.*, citing POMS DI 24510.063(B)(3)).

Plaintiff improperly conflates the ratings used for the Listings analysis with those used for the RFC determination.  Section 404.1520a governs the evaluation of mental impairments at steps 2 and 3 of the sequential evaluation process and establishes a "special technique" (the PRT) to be employed for that purpose.  20 C.F.R. § 404.1520a(a).  As relevant here, the agency is to rate a

---

[6] The POMS is used internally by employees of the SSA in evaluating Social Security claims and does not have the force and effect of law.  *Davis v. Sec'y of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989).  The POMS explains the meaning of SSA terms as well as the meaning intended by terms appearing within the regulations.  *Id.* (citing *Powderly v. Schweiker*, 704 F.2d 1092 (9th Cir. 1983)).  *See also Harper-Lee v. Astrue*, No. 2:11-cv-571, 2012 WL 4483007, at *5 (S.D. Ohio Sept. 27, 2012) (the POMS provides "only internal SSA guidance" and is not intended to and does not create rights enforceable by law) (quoting POMS).

9

claimant's degree of functional limitation in four broad functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself, i.e., the "Paragraph B" criteria of the Listings for mental impairments) according to a five-point scale (none, mild, moderate, marked, and extreme). 20 C.F.R. §§ 404.1520a(c)(3), (4). The ALJ's decision "must include a specific finding as to the degree of limitation in each of the[se] functional areas. . . ." 20 C.F.R. § 404.1520a(e)(4). For the mental disorder listings, marked limitation is defined as when a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d). Only "extreme" limitation, however, "represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4).

This special technique for reviewing mental impairments is not tantamount to the RFC determination:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria [relevant to adult mental disorder listings] *are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process*. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

Social Security Ruling (SSR)[7] 96-8P, 1996 WL 374184, at *4 (July 2, 1996) (emphasis added).

The ALJ's "marked limitation" finding was made in connection with the Paragraph B criteria of the mental Listings at step 3 of the sequential evaluation process. Steps 4 and 5 of the

---

[7] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

process require "a more detailed assessment by *itemizing various functions contained in the broad categories* found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]."  *Id.* at *4. As relevant to assessing the mental RFC, the broad category of "Understanding and Memory" includes the following specific functions: (1) the ability to remember locations and work-like procedures; (2) the ability to understand and remember very short and simple instructions; and (3) the ability to understand and remember detailed instructions.[8]  In assessing plaintiff's functioning in the category of "Understanding and Memory," the State Agency consultants rated only one of the three functional areas as markedly limited.  The other two were rated as moderately limited:

<br>

**Mental Residual Functional Capacity**

**MRFC1 - Mental Residual Functional Capacity (1 of 1)**

Evaluation Period: **Current Evaluation**

The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

Does the individual have understanding and memory limitations? **Yes**

| Understanding and Memory Limitation | Rating |
| --- | --- |
| The ability to remember locations and work-like procedures | Moderately Limited |
| The ability to understand and remember very short and simple instructions | Moderately Limited |
| The ability to understand and remember detailed instructions | Markedly Limited |

Explain in narrative form the presence and degree of specific understanding and memory capacities and/or limitations.
**The claimant can understand, remember and follow simple instructions for routine repetitive 1-2 tasks.**

---

[8] POMS DI 24510.063 offers guidance to State Agency psychological consultants on how to complete form SSA-4734-F4-SUP for rating and communicating mental RFC limitations within four broad categories: Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation.  POMS DI 24510.060.  Under these four main categories are groupings of twenty mental function items.  *Id.*  "Because of the complexity of mental disorder evaluation, a special Form SSA-4734-F4-SUP is to be used to document the mental residual functional capacity (RFC) decision, i.e., what an individual can do despite his /her impairment."  *Id.*

(Tr. 67, 78).  The State Agency psychologists also opined, in narrative form, that "[t]he claimant can understand, remember and follow simple interactions for routine repetitive 1-2 tasks."  (*Id.*).  The ALJ found these opinions mostly persuasive and limited plaintiff's RFC to unskilled simple, routine repetitive tasks of no more than one to two steps, thereby accommodating plaintiff's marked limitation in the ability to understand and remember *detailed* instructions.  (Tr. 22, 28).  Though the ALJ's decision does not identify the three specific tasks evaluated by the psychological consultants (Tr. 28), it is apparent he eliminated from the RFC any ability to handle detailed instructions to accommodate plaintiff's "marked limitation" to understand and remember detailed instructions.  That decision is substantially supported by the record, and the Court finds no error in this regard.

Plaintiff argues that it would be unprecedented to conclude that a claimant, though markedly limited in his ability to understand, remember, and apply information, is capable of full-time, goal-oriented, competitive work.  It may be rare, but it is not unprecedented.  *See Richard B. v. Comm'r of Soc. Sec.*, No. 1:20-cv-00585, 2021 WL 4316908, *8 (W.D.N.Y. Sept. 23, 2021) (quoting *Miller v. Berryhill*, 16-cv-6467, 2017 WL 4173357, *6 (W.D.N.Y. Sept. 20, 2017)) ("[O]pinions assigning 'marked' limitations in various work-related functions do not conclusively demonstrate that a claimant is unable to work."); *Keith E. L. v. Colvin*, No. 1:23-cv-1066, 2025 WL 524758, at *5 (M.D.N.C. Feb. 18, 2025) (quoting *Uplinger v. Berryhill*, No. 18-cv-481, 2019 WL 4673437, at *7 (W.D.N.Y. Sept. 25, 2019)) ("Marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to [simple, routine and repetitive tasks] in a work environment free of fast-paced production requirements.").

12

To the extent plaintiff points to evidence incompatible with the ALJ's RFC determination that plaintiff is capable of goal-oriented, full-time, competitive work, this is an impermissible invitation to the Court to reweigh evidence.  *See Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (The court may not "reweigh" the ALJ's findings; if they were "supported by substantial evidence, [the court] may not second-guess them, even if substantial evidence would support the opposite conclusion.").  The ALJ relied on substantial evidence to reach her conclusion in this regard.  When discussing the area of understanding, remembering, or applying information, the ALJ noted that plaintiff obtained his GED despite academic challenges.  (Tr. 20). The ALJ also noted that Dr. Griffiths found plaintiff's intellectual functioning in the average to low-average range based on an in-person assessment, and plaintiff had adequate recall and followed the flow of conversation without requiring repetition or clarification.  (*Id.*).  The ALJ also relied on and found largely persuasive three medical source opinions regarding plaintiff's mental impairments, the evaluation of which plaintiff does not challenge.

In sum, plaintiff urges the Court to find that the RFC determination and, consequently, the ALJ's conclusion at step 5 are not based on substantial evidence.  Plaintiff offers little more, however, than his counsel's own expectations to support that conclusion.  (*See* Doc. 9 at PAGEID 933 ("Surely an individual who is markedly limited in the ability to understand, remember, and apply information would be off-task at work more than just 10 percent of the time.")).  As the foregoing explains, applicable regulations do not compel mutual exclusion between a claimant's marked limitation in the ability to understand, remember, or apply information and full-time, goal-oriented, and competitive employment.  The ALJ's RFC determination demonstrates her consideration of the entire, relevant medical record and other evidence and is based on substantial evidence.

13

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's Statement of Errors (Doc. 6) be **OVERRULED**, the Commissioner's non-disability finding be **AFFIRMED**, judgment be entered in favor of the Commissioner, and this case be closed on the docket of the Court.

Date: 5/27/2026

Karen L. Litkovitz
United States Magistrate Judge

14

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

WADE M.,
      Plaintiff,

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 3:25-cv-188
Rice, J.
Litkovitz, MJ.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

15